UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------------x
DANIEL JOSEPH MARTINS,

                Plaintiff,

  -against-

THE COUNTY OF NASSAU, THE NASSAU COUNTY POLICE
DEPARTMENT, NASSAU COUNTY POLICE OFFICER ERIC J.
DOLLHAUSEN, Shield No. 2488; NASSAU COUNTY POLICE
DEPARTMENT LIEUTENANT NICHOLAS PANDOLFO, NASSAU
COUNTY POLICE DEPARTMENT SERGEANT ROBERT BRENT
and JOHN DOES #1, 2, AND 3 (Said names being fictitious, it being
the intent of Plaintiffs to designate any and all officers, members,
agents, servants, and/or employees of the aforementioned agencies
owing a Duty of care to Plaintiff),

                Defendants.
----------------------------------------------------------------------------x

**Decision and Order**
15-cv-5120(ADS)(AKT)

<u>APPEARANCES:</u>

**Law Offices of Thomas F. Liotti**
*Attorneys for the Plaintiff*
600 Old County Road, Suite 530
Garden City, NY 11530
       By:    Thomas F. Liotti, Esq., Of Counsel

**Nassau County Attorney's Office**
*Attorneys for Defendants Nassau County, Nassau County Police Department,*
    *Police Officer Eric J. Dollhausen, Lieutenant Nicholas Pandolfo, and Sergeant Robert Brent*
One West Street
Mineola, NY 11501
       By:    Michael J. Barresi, Deputy County Attorney

**New York Attorney General's Office**
*Attorneys for Proposed Defendant Peter Heuschneider*
200 Old Country Road, Suite 240
Mineola, NY 11501
       By:    Ralph Pernick, Assistant Attorney General

**SPATT, District Judge:**

      Presently before the Court in this § 1983 false arrest, malicious prosecution, and First Amendment retaliation case is a motion by the Plaintiff, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P.") 15(a), seeking leave to file an amended complaint.

1

For the reasons that follow, the motion is granted in part and denied in part.

I.   Background

The following facts are drawn from the proposed amended complaint ("PAC") and construed in favor of the Plaintiff.

On or about January 17, 2014, the Nassau County Police Department ("NCPD") enacted a policy aimed at preventing individuals from distracting motorists by displaying signs on the Long Island Expressway overpass between Exits 40 and 41. The policy was codified in an internal memorandum (the "Policy Memo"), which stated, in relevant part, the following:

> Please be advised that we have had issues with a subject hanging signs on this pedestrian bridge distracting traffic below to the point of almost causing accidents. A HPB Police Officer observed the subject's conduct on January 17, 2014 and requested that the subject move the signs and move to another locations [sic] so as not to cause an accident wherein people may be injured. A supervisor from HPB and Sgt Gilson responded to the scene wherein the subject was finally convinced to leave before he caused an accident. The subject indicated that he would be back and that the officers were violating his freedom of speech.
>
> If the subject should return and refuses to leave, then he may be charged with Criminal Nuisance in the Second Degree, PL 240.45(1), B misdemeanor for conduct either unlawful in itself or unreasonable under all the circumstances, he knowingly or recklessly creates or maintains a condition which endangers the safety or health of a considerable number of persons.

Apparently drawing on officers' observations from this prior incident, the Policy Memo went on to provide the following proposed language (the "NCPD Sample Language") for officers to include when drafting accusatory instruments pursuant to this policy, namely:

> On January X, 2014 at XXXX hours, your deponent observed the defendant, on New York State Pedestrian Bridge number 1049160 located over the Long Island Expressway (LIE) between exits 40 and 41 in Jericho, jumping up and down, waiving flags [sic] with his arms (and whatever else he did to get their attention) in order to get the motorists' attention to look at the signs the defendant had hung on the pedestrian bridge fencing. The defendant's actions distracted motorists on the LIE causing numerous motorists to slow their vehicle and some to swerve their vehicle in order to avoid collision with other motorists because they were apparently paying attention to the defendant and his signs instead of the roadway. Your deponent directed the defendant to cease and desist his activity and remove the signage before he caused an auto accident and people were injured otherwise he would be arrested for violating the criminal nuisance statute. The defendant was further informed that he was in violation of New York State Highway Law section 52 by posting signs at this location

without a permit. Hundreds of cars (depending on traffic flow) were traveling past this pedestrian bridge at speeds of 55 miles per hour and these motorists' safety and health were endangered by the defendant's conduct as stated above.

Relevant here, the NCPD Sample Language advised police personnel to state that the grounds for an arrest under this policy were based upon: (1) his or her own personal knowledge, and (2) a supporting deposition from the New York State Department of Transportation ("DOT").

Although the Policy Memo was prepared on January 17, 2014, the supporting deposition referenced therein appears to refer to a February 4, 2014 statement given to police by the proposed Defendant Peter Heuschneider, an engineer employed by New York State with responsibility over the particular overpass in question. Specifically, Heuschneider stated that:

> I am the Assistant Resident Engineer/Permit Engineer Region 10 Northern Nassau County for New York State Department of Transportation. The foot bridge that crosses over the Long Island Expressway between Exits 40 and 41 is New York State Property. As per New York State Highway [Law] Article 3 Section 52, you are not allowed to erect signs which hang off state bridges because it may cause a driver to be distracted, creating a risk of a serious auto accident. The state gives the DOT the authority to take down unauthorized signs. Any outdoor advertising sign within the controlled area, except official signs, signs in areas certified by the NYS DOT shall be registered with the New York State Department of Transportation. Any person, firm, corporation, partnership or association, before erecting, maintaining or using any outdoor advertising sign, must obtain a permit from the New York State Department of Transportation.

In furtherance of the policy outlined above, NCPD personnel "recruited/enlisted" Heuschneider to create this supporting deposition, and even edited and drafted portions of it.

On June 6, 2014, the Plaintiff hung a politically-themed sign and related materials from the overpass in question. Pursuant to its policy, NCPD officers arrested the Plaintiff and charged him with second-degree criminal nuisance and disorderly conduct. It is not alleged that Heuschneider facilitated, participated in, or was present for the Plaintiff's arrest.

However, the accusatory instrument prepared in support of the charges against the Plaintiff included substantially all of the NCPD Sample Language and referenced Heuschneider's supporting deposition regarding the State Highway Law's prohibition against hanging signs from overpasses and the associated dangers posed to motorists.

On December 8, 2014, the Nassau County District Court dismissed the charges against the Plaintiff on the ground that his conduct had amounted to protected political expression.

This action ensued.

## II. RELEVANT PROCEDURAL HISTORY

The original complaint sought solely injunctive relief against Heuschneider in his official capacity. However, on April 29, 2016, the Court dismissed the complaint against him for lack of subject matter jurisdiction.

Thereafter, on August 31, 2016, the Plaintiff filed this motion, which seeks to amend the complaint to add new claims against Heuschneider, this time seeking money damages against him in his individual capacity. In particular, as noted above, the Plaintiff alleges causes of action based on § 1983 false arrest and malicious prosecution; § 1983 First Amendment retaliation; and similar claims under analogous provisions of the New York State Constitution.

Although no longer a party to the action, Heuschneider submitted a legal memorandum opposing the Plaintiff's relief. He argued that the new allegations, even if accepted as true, fail to set forth a plausible basis for concluding that he violated the Plaintiff's constitutional rights.

## III. DISCUSSION

### A. The Standard of Review

Under FED. R. CIV. P. 15(a)(2), the Court should freely grant a party leave to amend its pleading when justice so requires. In determining whether leave is appropriate – a wholly discretionary decision, *see John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) – the Court considers factors such as undue delay, prejudice to the defendants, and futility of the proposed amendments, *see Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 118 (E.D.N.Y. 2011).

"An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead*, 282 F.3d 83, 88 (2d Cir.

2002). Stated differently, a proposed amendment will not be allowed unless the complaint, as amended, includes " 'enough facts to state a claim to relief that is plausible on its face,' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and 'allow[s] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)." *Otis-Wisher v. Medtronic, Inc.*, 616 F. App'x 433, 434 (2d Cir. 2015).

As is true of Rule 12(b)(6) motions generally, " '[i]n deciding whether an amended complaint meets this threshold, the Court is required to accept the material facts alleged in the amended complaint as true and draw reasonable inferences in the plaintiffs' favor.' " *Fernandez v. Kinray, Inc.*, No. 13-cv-4938, 2014 U.S. Dist. LEXIS 178422, at *9 (E.D.N.Y. Dec. 30, 2014) (quoting *Mendez v. U.S. Nonwovens Corp.*, 2 F. Supp. 3d 442, 451 (E.D.N.Y. 2014)).

With these standards in mind the Court turns to the parties' substantive contentions.

B.   **Whether Heuschneider's Opposition is Improper**

At the outset, the Plaintiff asks the Court to disregard Heuschneider's opposition on the ground that he, as a non-party, lacks standing to be heard on the present motion. This request is denied.

It is true, as the Plaintiff suggests, that after successfully obtaining dismissal of the original complaint, Heuschneider is no longer a party to this action with the concomitant authority to participate in motion practice. *See Copantitla v. Fiskardo Estiatorio, Inc.*, No. 09-cv-1608, 2010 U.S. Dist. LEXIS 33430, at *13-*14 (S.D.N.Y. Apr. 5, 2010) (noting that a non-party's standing to contest a motion to amend "is, at best, dubious") (quoting *Vasquez v. Summit Women's Center, Inc.*, No. 01-cv-955, 2001 U.S. Dist. LEXIS 25440, at *3 n.1 (D. Conn. Nov. 16, 2001)).

However, in similar situations, courts have relied on "a variety of rules and rationales" to justify their consideration of opposition papers submitted by proposed defendants wielding only

5

questionable authority to do so. *Uhlein v. Seymour*, No. 03-cv-1147, 2006 U.S. Dist. LEXIS 16742, at *8 n.5 (N.D.N.Y. Apr. 6, 2006) (relying on FED. R. CIV. P. 12(h)(3) to consider papers filed by parties who "technically . . . lack[ed] standing" to oppose a motion to amend); *see Vasquez*, 2001 U.S. Dist. LEXIS 25440, at *3 n.1 (construing opposition papers as a freestanding motion to dismiss under FED. R. CIV. P. 21 "[i]n light of [the filers'] questionable standing as non-parties to contest the filing of an amended complaint"); *Oneida Indian Nation v. County of Oneida*, 199 F.R.D. 61, 71 (N.D.N.Y. 2000) (deeming a non-party to be an *amicus curiae* in order to consider its opposition to a motion to amend); *see also Clayton v. District of Columbia*, 999 F. Supp. 2d 178, 182 n.6 (D.D.C. 2013) (relying on FED. R. CIV. P. 24(b) in deciding that, "because the [filer] was previously a party to the suit and could have filed a motion to intervene to oppose further amendment, its opposition [to the plaintiff's motion to file a second amended complaint] has been considered").

In this case, even assuming that Heuschneider lacks standing to oppose the relief sought, the Court would nevertheless be inclined to consider the points and authorities raised in his submission and, to that end, would make use of the "variety of rules and rationales" that are available for doing so. After all, "[e]ven in the absence of an opposition, . . . the Court must consider whether the proposed amendment is futile," *Danaher Corp. v. Travelers Indem. Co.*, No. 10-cv-121, 2016 U.S. Dist. LEXIS 42263, at *11 n.2 (S.D.N.Y. Mar. 30, 2016), and the only conceivable end that might be served by disregarding Heuschneider's relevant arguments at this juncture would be to prolong the inevitable filing of a substantially similar motion to dismiss after service of the amended complaint.

Under these circumstances; and in view of the Plaintiff's reply, in which he duly responded to Heuschneider's arguments regarding the facial sufficiency of the PAC, the Court, in its discretion, will consider the arguments on all sides in adjudicating this motion.

C. Whether the PAC States a Plausible Claim for Relief Against Heuschneider

The Plaintiff attributes one discrete act of wrongdoing to Heuschneider, namely, providing an impliedly false statement to police, which was used as a basis for bringing legally-insufficient charges against him.

In this regard, the Plaintiff does not allege that any of the assertions contained in Heuschneider's statement was actually false. Rather, he contends that the supporting deposition as a whole was materially misleading in that it purported to identify New York Highway Law § 52 as a legal justification for punishing his conduct. *See* PAC ¶ 23 (alleging that the supporting deposition set forth legal authority to arrest and prosecute individuals engaged in political expression); *id.* ¶ 25 (alleging that the supporting deposition was created with knowledge that the "Highway Law has no applicability to Political Expression"); Pl. Reply Memo at 4 (asserting that Heuschneider "intentionally misrepresented the application of a state statute"); *see also* PAC ¶¶ 22, 28 (describing the supporting deposition as, "false," "spurious," and "deceitful"); Pl. Reply Memo at 5 (arguing that the Plaintiff's arrest was a foreseeable consequence of "Heuschneider's deliberately false and misleading statement"). As noted, the Plaintiff contends that the NCPD relied upon this impliedly false document to arrest and prosecute him, ignoring the legal insufficiency of the charges.

The Court disagrees.

1. **False Arrest**

Regardless of whether it is a civilian, as opposed to an arresting officer, who is being sued for false arrest, the Plaintiff must plausibly allege that the Defendant intended to confine him. *See TADCO Constr. Corp. v. Dormitory Auth. of N.Y.*, 700 F. Supp. 2d 253, 268 (E.D.N.Y. 2010).

In this regard, "a defendant who furnishes information to police will not generally be held liable for false arrest when the police exercise independent judgment to arrest a plaintiff." *Rateau v.*

*City of New York*, No. 06-cv-4751, 2009 U.S. Dist. LEXIS 90112, at *15 (E.D.N.Y. Sept. 29, 2009) (citing *Du Chateau v. Metro-North Commuter R.R. Co.*, 253 A.D.2d 128, 131, 688 N.Y.S.2d 12 (1st Dep't 1999)).

Rather, " 'a plaintiff [must] show that [a private] defendant instigated his arrest, thereby making the police agents in accomplishing [the] defendant's intent to confine the plaintiff.' " *Id.* at *15-*16.

At the pleading stage, this requires plausible allegations that the Defendant, using "knowingly false information," "affirmatively induced or importuned the officer to arrest" the Plaintiff. *See Anilao v. Spota*, 774 F. Supp. 2d 457, 510-11 (E.D.N.Y. 2011) (noting that " '[t]o hold a defendant liable as one who affirmatively instigated or procured an arrest, a plaintiff must show that the defendant or its employees did more than merely provide information to the police' " (quoting *King v. Crossland Sav. Bank*, 111 F.3d 251, 257 (2d Cir. 1997)); *see also Paul v. Bank of Am. Corp.*, No. 09-cv-1932, 2011 U.S. Dist. LEXIS 15569, at *22 (E.D.N.Y. Feb. 14, 2011) ("A [private] defendant may be said to 'instigate' an arrest if he has shown 'undue zeal' or has been 'active and officious' " in seeking the plaintiff's detainment (quoting *Curley v. Am. Airlines, Inc.*, No. 91-cv-2724, 1996 U.S. Dist. LEXIS 17096, at *4 (S.D.N.Y. Nov. 19, 1996)); *Fowler v. Robinson*, No. 94-cv-836, 1996 U.S. Dist. LEXIS 1710, at *14 (N.D.N.Y. Feb. 12, 1996) (noting the distinction between a civilian who "requests or insists that a police officer or agency arrest another person" and one who "merely mak[es] a statement and leav[es] it to the officer to decide").

As one district court has explained,

> [a] defendant "instigates" an arrest when he takes "an active role in the arrest of the plaintiff, such as giving advice and encouragement or importuning the authorities to act," with the intent to confine the plaintiff. *Lowmack v. Eckerd Corp.*, 303 A.D.2d 998, 999, 757 N.Y.S.2d 406, 408 (4th Dep't 2003) (internal marks omitted). Such an active role includes the provision of false information leading to an arrest, where the defendants "lacked reasonable cause for their belief in the plaintiff's culpability." *Weintraub* [*v. Bd. of Educ.*], 423 F. Supp. 2d [38,] 56 [E.D.N.Y. 2006] (denying summary judgment on false arrest claim because there was an issue of fact as to whether defendant "knew [plaintiff] had not assaulted her, but nonetheless intended to have him arrested by making false statements to the police").

8

*TADCO Constr. Corp.*, 700 F. Supp. 2d at 269-70 (false arrest claim sufficiently stated against a Dormitory Authority agent who falsely reported to the police that a construction worker was illegally trespassing on a job site); *see Rateau*, 2009 U.S. Dist. LEXIS 90112, at *16 (a factual dispute existed where the plaintiff claimed that a civilian employee in a municipal call center falsely reported to the police that he made threats during a phone call to personally harm him and the call center); *Paul*, 2011 U.S. Dist. LEXIS 15569, at *24 (false arrest claim sufficiently stated against bank representatives who falsely reported to the police that the plaintiff engaged in credit card fraud).

Applying these standards, the Court concludes that the allegations in the PAC, taken as true, fail to make it plausible that Heuschneider affirmatively instigated the Plaintiff's arrest based on knowingly false information.

First, the supporting deposition is not alleged to contain any false information – consistent with Heuschneider's statements, the Plaintiff does not dispute that the overpass in question is State property; that Highway Law § 52 outlaws hanging signs from the overpass without a permit; that driver safety is the policy rationale behind this rule; or that the DOT is permitted to remove unauthorized signage.

The Court finds no merit in the Plaintiff's theory of "implied falsity," under which the supporting deposition is alleged to wrongly imply that Highway Law § 52 somehow criminalizes political expression. In the Court's view, Heuschneider's statements cannot plausibly be read as suggesting either that Highway Law § 52 is a content-based regulation on speech, or that a violation of the statute carries a criminal penalty.

In fact, as discussed in greater detail below, the Court finds that there is nothing in the supporting deposition; the text of Highway Law § 52; or the written NCPD Policy Memo to plausibly support the inference that the Plaintiff's arrest was part of a broader effort by the NCPD to suppress political expression, rather than to simply eliminate hazardous driving conditions.

9

In any event, even assuming that Heuschneider *did* misstate the applicability of Highway Law § 52 to the NCPD's law enforcement policy, there are no plausible allegations to support the inference that his misstatement was intentionally designed to procure the Plaintiff's imprisonment.

Unlike the maliciously false reports of criminal behavior other courts have found sufficient to support a false arrest claim against private defendants, the supporting deposition in this case lacks any reference whatsoever to the Plaintiff or his allegedly protected activity – nor could it, as the record shows that Heuschneider gave his statement nearly four months prior to the events in question. At best, the supporting deposition sets forth Heuschneider's interpretation of a discrete provision of State law, and falls well short of imputing any specific conduct to the Plaintiff, criminal or otherwise.

Further, far from acting with "undue zeal," Heuschneider did not contact the police to give his statement. Rather, accepting the Plaintiff's allegations as true, the NCPD actively solicited *him* to provide an interpretation of the Highway Law in furtherance of its policy objectives. In fact, the PAC fails to allege whether the Plaintiff is even the same individual referenced in the Policy Memo, *see, e.g.*, PAC ¶¶ 17-18 (alleging that the NCPD policy targeted all individuals engaged in political expression, not simply the Plaintiff), thus making it unclear whether Heuschneider knew of the Plaintiff or his prior demonstrations at the time he gave the supporting deposition.

Accordingly, to the extent that the Plaintiff seeks to amend the complaint to add a § 1983 false arrest claim against Heuschneider, his motion is denied on the ground that such an amendment would be futile. Further, because a claim for false arrest is the same under New York law as it is under § 1983, *see Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007), the Court also denies leave to amend the complaint to add an analogous state law cause of action.

2. Malicious Prosecution

"As with false arrest, although malicious prosecution claims are usually made against arresting or prosecuting officials, they can also be brought against individuals other than the arresting officer when such a person actively engaged in a plaintiff's prosecution." *TADCO Constr. Corp.*, 700 F. Supp. 2d at 270.

However, again, a § 1983 malicious prosecution claim will only lie against a private defendant when it is plausibly alleged that he or she " 'initiated' or 'instigated' the proceedings against [the plaintiff] by contacting the police and then encouraging their prosecution." *Shattuck v. Town of Stratford*, 233 F. Supp. 2d 301, 314 (D. Conn. 2002); *see also White v. Frank*, 855 F.2d 956, 959 (2d Cir. 1988) (in a § 1983 malicious prosecution action, noting that the complaining witness may be held liable for her role "in initiating a baseless prosecution"); *Lawson v. N.Y. Billiards Corp.*, 331 F. Supp. 2d 121, 129-30 (E.D.N.Y. 2004) (same); *Arum v. Miller*, 273 F. Supp. 2d 229, 234 (E.D.N.Y. 2003) (Spatt, J.) (same).

In the Court's view, for substantially the same reasons as outlined above, the PAC, taken as true, does not make it plausible that Heuschneider actively initiated or instigated the criminal proceedings against the Plaintiff. Accordingly, to the extent that the Plaintiff seeks to amend the complaint to add claims against Heuschneider based on malicious prosecution under § 1983 and New York law, his motion is denied. *See TADCO Constr. Corp.*, 700 F. Supp. 2d at 270 (a claim for malicious prosecution is the same under New York law as it is under § 1983).

3. First Amendment Retaliation

Finally, a Plaintiff alleging government retaliation under the First Amendment is required to plead that the Defendant's adverse actions were motivated or substantially caused by his exercise of a right protected by the First Amendment. *See Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).

In this case, the Court finds that the PAC fails to allege any plausible connection between the Plaintiff's arrest and his specific political expression.

Simply stated, the Plaintiff was arrested for hanging a sign off a State overpass and distracting motorists below – conduct which, irrespective of his particular message, would have produced his arrest.

Indeed, the challenged police policy directs officers to arrest individuals caught "hanging signs" from the overpass in question, which "distract[ ] traffic below to the point of almost causing accidents." This directive does not distinguish between permissible and impermissible messages on such signs; it broadly states that hanging *any* sign from a State bridge may constitute "conduct either unlawful in itself or unreasonable under all the circumstances," in that it "creates or maintains a condition [ ] endanger[ing] the safety of a considerable number of persons," in violation of N.Y. Penal Law § 240.45(1).

Similarly, as noted above, neither the text of Highway Law § 52; the supporting deposition by Heuschneider; nor the accusatory instrument in the Plaintiff's criminal proceeding provides any indication that the Plaintiff's arrest was motivated by the political content of his speech, or was otherwise in furtherance of a government effort to suppress political expression, rather than simply to eliminate hazardous driving conditions. In the Court's view, the PAC fails to set forth any non-conclusory allegations to support the inference that the Plaintiff would have evaded arrest if the message written on his sign had been apolitical.

Therefore, in the Court's view, the PAC fails to sufficiently allege that Heuschneider's conduct in creating the supporting deposition was motivated or substantially caused by the Plaintiff's political expression. Accordingly, there is no plausible basis for concluding that, by attesting to the purpose and effect of Highway Law § 52, without any specific reference to the Plaintiff or his actions, Heuschneider somehow deprived the Plaintiff of his constitutional rights.

To the extent that the Plaintiff seeks to amend the complaint to add claims against Heuschneider under § 1983 and Article 1 the New York Constitution based on a deprivation of his right to free speech, his motion is denied. *See Prince v. County of Nassau*, 837 F. Supp. 2d 71, 107 (E.D.N.Y. 2011) (dismissing a State law retaliation claim on the same grounds as a similar § 1983 First Amendment retaliation claim), *aff'd*, 563 F. App'x 13 (2d Cir. 2014).

### IV. CONCLUSION

Based on the foregoing, to the extent the proposed amendments to the complaint relate to Peter Heuschneider, the Plaintiff's motion for leave to amend is DENIED with prejudice.

However, having received no objections to the remaining proposed amendments, which, after initial discovery, seek primarily to identify the NCPD employees who are currently named as "John Doe" Defendants, the motion to amend is GRANTED.

The Court will deem the Proposed Amended Complaint, which was filed on August 31, 2016, to have been duly filed and served on all appearing parties via ECF. Those parties' responses will be due on or before May 15, 2017.

The Plaintiff is directed to personally serve the amended pleading on all newly-named Defendants as required under the Federal Rules, and file proof of such service within 30 days of the date of this Order.

It is **SO ORDERED.**

Dated: Central Islip, New York
April 24, 2017

*/s/ Arthur D. Spatt*_____
ARTHUR D. SPATT
United States District Judge